Case 4:19-cv-00374   Document 23   Filed on 08/10/20 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
August 10, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GREGORY JOHANN YOUNG, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.: 4:19-cv-00374 |
| § | |
| ANDREW SAUL, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM AND ORDER

Young filed this action under the Social Security Act, 42 U.S.C. §§ 405(g), for review of the Commissioner's final decision denying his request for disability insurance benefits. Young and the Commissioner moved for summary judgment. Dkt. 14, 15. Having considered the parties' filings, the record, and the applicable law, the Court **DENIES** Young's Motion, **GRANTS** the Commissioner's Motion, and **AFFIRMS** the Commissioner's final decision.[1]

### I. Background

**1. Factual and Administrative History**

Young filed claims for disability insurance benefits and supplemental security income on October 5, 2016, alleging a disability onset date of July 30, 2013 due to a back injury, herniated discs, bulging discs, and degenerative disc disease. Tr. 256-64, 300. The agency denied Young's claim on initial review on February 28, 2017 and on reconsideration on June 26, 2017. Tr. 91-

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including entry of final judgment. Dkt. 22.

104, 122-38.  An administrative law judge ("ALJ") held a hearing on February 21, 2018 at which Young and a vocational expert testified.  Tr. 35-55.  The ALJ denied Young's application for benefits on April 19, 2018.  Tr. 14-34.  The Appeals Council denied review on December 8, 2018, and the ALJ's decision became the final decision of the Commissioner.  Tr. 1-5; s*ee* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

## 2. Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).  When reviewing the Commissioner's decision, the Court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Id*.

## 3. Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity."  *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the claimant is not disabled.  At the second step, the ALJ must determine whether the claimant has a severe impairment.  *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant's impairment does not

have a de minimis impact on her ability to work, she is not disabled. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § pt. 404, subpt. p, app. 1 [hereinafter "App. 1"]. If so, the claimant is disabled. If not, the ALJ must determine the claimant's "residual functional capacity" (RFC), which is the claimant's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545). At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work. If the answer is no, the ALJ determines at step five whether the claimant can perform any other work that exists in the national economy. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five. *Newton v. Apfel*, 209 F.3d at 452-53.

**4. The ALJ's Decision**

Based on these principles, as well as his review of the evidence presented at the hearing, the ALJ determined that Young met the insured status requirements of the Social Security Act through September 30, 2017, and that he has not engaged in substantial gainful activity since August 31, 2015. Tr. 19. The ALJ further concluded that Young suffers from the following severe impairments: disorder of the cervical spine and disorder of the lumbar spine. Tr. 20. The ALJ concluded Young suffers from the following non-severe impairments: seizures precipitated by hypoglycemia, past arm fracture, and neurocognitive disorder. *Id.* The ALJ found Young did not have an impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments in Appendix 1 after specifically considering his spine disorders under Listing 1.04. Tr. 22-23. The ALJ determined Young has the RFC to

> lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday with normal breaks. [Young] can never climb ropes, ladders, or scaffolding. [Young] can never crawl. [Young] can have no exposure to extreme cold, unprotected heights, or dangerous machinery. [Young] can occasionally engage in stooping, kneeling, or crouching.

Tr. 23. Relying on the testimony of a vocational expert, the ALJ determined Young was unable to perform any past relevant work. Tr. 28. The ALJ did not determine whether Young possessed transferrable job skills from his past relevant work, finding the Medical-Vocational Rules support a finding that Young is not disabled regardless of the transferability of his job skills. *Id*. Considering Young's age, education, work experience, and RFC, the ALJ determined jobs exist in significant numbers in the national economy that Young can perform. Tr. 28-29. For these reasons, the ALJ concluded Young is not under a disability as defined by the Social Security Act and denied his application for benefits. Tr. 28-29.

## II. Analysis

**1. The ALJ did not err in assigning very little weight to the treating physician opinion.**

Young argues Dr. Williams' treating physician opinion is entitled to controlling weight and that the ALJ committed legal error by assigning it "very little weight." Dkt. 15-1 at 5 (citing Tr. 619-21). First, a treating physician's statements that a claimant is "disabled" or "unable to work" are not entitled to any deference. *Neely v. Barnhart*, 512 F. Supp. 2d 992, 997 (S.D. Tex. 2007) (citing *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citations omitted)). An ALJ need not defer to a treating physician's conclusion that a claimant is disabled because such an opinion has no "special significance" and is not considered a "medical opinion" entitled to great weight within the meaning of the regulations. 20 C.F.R. § 404.1527(d)(3); *Miller v. Barnhart*, 211 F.

4

App'x 303, 305 (5th Cir. 2006) ("[A]n ALJ need not give special weight to conclusions about disability or ability to work . . . ."); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citation omitted). Therefore, the ALJ did not err by failing to give controlling weight to Dr. Williams' statement that Young is permanently disabled.

The ALJ assigned very little weight to Dr. Williams' opinion regarding Young's functional capacity because he found the opinion inconsistent with the objective medical record and longitudinal record as a whole. Tr. 26. Specifically, the ALJ noted Young's physical examinations are "grossly normal, demonstrating that he retains a high degree of functioning physically." *Id*. Yet, after examining Young only three times, Dr. Williams gave his opinion that Young's functional capacity is severely limited. Tr. 606-08, 617-24. The record includes Dr. Williams' notes, which repeat Young's subjective complaints, but completely lack objective medical testing that supports his opinion of Young's functional capacity. *Id*.

Furthermore, Dr. Williams' opinion consists of check-the-box forms with essentially no narrative discussion. Tr. 617-24. Where a treating physician's opinion is "conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence[,]" good cause exists to assign it less than controlling weight. *Newton v. Apfel*, 209 F.3d at 456 (citation omitted); *see also Foster v. Astrue*, 410 F. App'x. 831, 832-33 (5th Cir. 2011) (holding no error in assigning little weight to a treating physician opinion where the opinion was brief, conclusory in nature, and lacked explanatory notes and supporting objective tests or examinations). Check-the-box forms without "explanatory notes, references to objective medical tests, or a rationale to support their conclusion" such as those used by Dr. Williams in this case, "typify the 'brief and conclusory' statements that an ALJ may disregard under the good cause exceptions to the treating physician rule." *Kim Nguyen v. Colvin*, Civil Action No. 4:13-CV-2957,

5

2015 WL 222328, at *9 (S.D. Tex. Jan. 14, 2015) (quoting *Foster v. Astrue*, 410 F. App'x at 833). Therefore, the ALJ did not err by assigning very little weight to Dr. Williams' opinion.

**2. The ALJ did not err in assigning some weight to the CDI Summary Report.**

Young contends the ALJ erred by admitting into evidence and assigning some weight to the Cooperative Disability Investigation ("CDI") Unit's Summary Report. Dkt. 15-1 at 6. Young objects to the ALJ's consideration of the report because it contains hearsay statements and false conclusions. *Id*. at 6-10. As a threshold matter, an ALJ may "receive *any* evidence at the hearing that . . . she believes is material to the issues, even though the evidence would not be admissible in court under the rules of evidence used by the court." 20 C.F.R. § 404.950 (emphasis added); *Richardson v. Perales*, 402 U.S. 389, 400 (1971); *Carroll v. Massanari*, No. Civ.A. 500CV0267C, 2001 WL 406227, at *3 (N.D. Tex. Apr. 17, 2001) ("[S]trict rules of evidence, applicable in the courtroom, are not to operate at social security hearing so as to bar the admission of evidence otherwise pertinent.").

As for Young's argument that the ALJ erred by admitting an unreliable or false report, it is the sole duty of the ALJ, rather than the Court, to weigh the evidence in the record, resolve material conflicts in the evidence, and make determinations of the credibility of the evidence. *Horn v. Colvin*, Civil Action No. G-15-126, 2017 WL 476740, at *1 (S.D. Tex. Feb. 3, 2017) (quoting *Carrier v. Sullivan*, 944 F.2d 105, 109 (5th Cir. 1991)). In this case, the ALJ heard Young's objection to the CDI Report during the disability hearing but indicated he would admit and assign the report appropriate weight, which he did. Tr. 26-27, 37-38. The ALJ also explicitly addressed the relevance of the report, noting it "specifically relate[s] to the claimant's claims for disability. The findings of a law enforcement officer conducting an official investigation that specifically relate to the claimant's claims for disability is relevant information that should be

considered in this decision." Tr. 27. Because the ALJ is free to admit and consider any evidence that is relevant and material to the issues, the ALJ did not err by admitting the report, determining its credibility, and assigning it some weight. *See* 20 C.F.R. § 404.950.

Even if the ALJ had erred in admitting the report, "[p]rocedural perfection in administrative proceedings is not required," and the Court will remand a case only if "the substantial rights of a party have been affected." *McCullough v. Berryhill*, Civil No. SA-18-CV-00128-ESC, 2018 WL 1431124, at *10 (W.D. Tex. Mar. 29, 2019) (citations omitted). An ALJ's error in admitting evidence is ground for remand only if the error "would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Id.* (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). The ALJ's decision makes clear he did not rely exclusively on the CDI Report in finding Young not disabled but relied on the objective medical record and the opinion evidence as weighed. Tr. 24-27. Further, while the CDI Report predominately addresses whether Young's subjective complaints and symptoms are consistent with the medical evidence, the ALJ did not rely exclusively on the CDI Report in determining whether Young's complaints are consistent with the record. Tr. 26-27. Instead, the ALJ relied on Young's physical examinations throughout the record, which were "grossly normal, demonstrating that he retains a high degree of functioning physically" and found Young's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 26. Therefore, even assuming the admission of the Report into evidence was error, Young was not prejudiced by this error because the ALJ did not rely exclusively on the Report to determine Young's RFC or assess whether his subjective complaints are consistent with the record.

### 3. The ALJ's RFC determination is supported by substantial evidence.

As discussed above, the ALJ did not err by assigning very little weight to Dr. Williams' treating physician opinion. Young argues that, by assigning only very little weight to Dr. Williams' opinion, "the ALJ decided the [RFC] independent of any medical testimony, [and therefore] the ALJ's RFC assessment is not supported by substantial evidence." Dkt. 15-1 at 6. As support for this argument, Young relies on the Fifth Circuit's holding in *Ripley v. Chater* that, in most cases, the ALJ should "request a medical source statement[2] describing the types of work that the applicant is still capable of performing." 67 F.3d 522, 557 (5th Cir. 1995). In essence, Young argues an ALJ must request a new medical source statement any time she assigns little weight to the medical source statements in the record. That is not the holding in *Ripley v. Chater*.

The very argument made by Young in this case was rejected in *Jones v. Berryhill*. Civil Action No. 17-5324, 2018 WL 1325851, at *11 (E.D. La. Feb. 23, 2018), *adopted by* 2018 WL 1287637 (Mar. 13, 2018). In *Jones*, the court rejected the claimant's argument that the ALJ violated *Ripley* by assigning little weight to every medical source statement in the record. *Id.* The *Jones* court explained that, not only does *Ripley* permit an ALJ to determine a claimant's RFC without *any* medical source statement in the record, it also permits the ALJ to determine a claimant's RFC after assigning little weight to every medical source statement, based on its reasoning that

> The Fifth Circuit [in *Ripley*] did not hold that the Commissioner must always obtain [a medical source statement] or that an ALJ cannot determine a claimant's [RFC] without one. Rather, the court held that, when there is no medical source statement, the ALJ may determine [the claimant's RFC] if there is substantial evidence in the record to support the determination. Obviously, if the ALJ is competent to assess a claimant's [RFC] without any medical source statement, he is competent to do so in the instant case, in which the record contains [multiple] medical source

---

[2] A medical source statement is a "medical opinion[] submitted by [an] acceptable medical source[], including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s) . . . ." SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996).

> statements . . . which the ALJ found are entitled to little weight—provided that other substantial evidence supports his functional findings.

*Id*. In this case, the record includes two medical source statements to which the ALJ assigned little weight: the opinion given by Dr. Williams and the opinion given by state agency consultative examiner, Dr. Sai Nimmagadda.[3] Tr. 134-36, 617-25. When an ALJ assigns medical opinions little weight, he does not reject those opinion, making the record devoid of any medical source statement. *Jones v. Berryhill*, 2018 WL 1325851, at *10. Instead, when an ALJ assigns little weight to every medical source statement in the record, the ALJ "relie[s] on the medical treatment records, rather than on any expert medical opinion, to make his [RFC] findings." *Id*.

Therefore, the ALJ in this case was free to determine Young's RFC after assigning little weight to the medical source statements as long as other substantial evidence supports his findings. *See id*. at *11. As discussed below, substantial evidence supports the ALJ's RFC determination.

**A. The state agency consultant opinions.**

In February 2017, Dr. Benfield opined that Young has no severe impairments and, therefore, did not assess Young's functional capacity. Tr. 87. In June 2017, Dr. Nimmagadda, opined Young could perform medium work, noting that, although Young's impairments could cause his subjective complaints and symptoms, his complaints were only partially consistent with the objective medical record. Tr. 133, 136. The ALJ ultimately assigned little weight to the state agency consultant opinions and determined that Young had a *greater* degree of physical limitation than determined by Dr. Nimmagadda and Dr. Benfield based on his finding that the "evaluations and assessments are inconsistent with subsequently added medical evidence and the record as a whole, some of which was not available at the time the [opinions] were made." Tr. 27. Dr.

---

[3] Another state agency consultative examiner, Dr. Connie Benfield, reviewed Young's medical records but did not give a medical source statement because she determined Young had no severe impairments and that the record included "significant evidence of symptoms magnification." Tr. 87.

Nimmagadda's state agency consultant opinion supports an RFC for medium work; however, the ALJ incorporated additional restrictions to account for his finding that Young was more limited than acknowledged Dr. Nimmagadda.

### B. The CDI Report and Young's subjective complaints and symptoms.

During the hearing, Young testified that he uses a wheelchair and that he is only able to walk for about ten feet and stand for five to ten minutes. Tr. 44-47. He also testified he can sit for only 15 minutes before he has to change positions or stand. Tr. 47. Young testified he needs assistance dressing but that he can bathe independently. *Id*. Young estimated he had not driven a car for approximately one year, although he has a driver's license. Tr. 47-48. He also denied being able to perform any household chores or spend any time outside. *Id*.

The ALJ concluded that, although Young's impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical and other evidence in the record. Tr. 26. The ALJ relied on statements in the CDI report from Young's neighbor that she had never seen Young use a wheelchair and that, although he had used a cane "a long time ago" he was not currently using one. Tr. 27. Young's neighbor also reported that Young does all of the maintenance and upkeep of the house and yard and that she had recently seen Young "running" around the outside of the house. *Id*. The ALJ cited the CDI Report as indicative of Young's "high degree of functioning physically." *Id*. As noted by the ALJ, the CDI Report contradicts Young's testimony. Tr. 26-27. Conflicts in the evidence are for the Commissioner, rather than the Court, to resolve. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ clearly considered both Young's testimony and the contradicting evidence in the CDI Report, and

concluded the contents of the CDI report establish Young "retains a high degree of functioning physically." Tr. 27.

### C. The objective medical record.

The ALJ also noted specific medical findings in the record, which support his RFC determination. For example, as noted by the ALJ, Young's physical examinations have been largely normal, although they do indicate Young has some functional limitations. Tr. 25. On May 6, 2014, Young had back tenderness, some pain when changing positions, and a slightly restricted range of motion in his back, but he was able to sit, stand, move, climb on and off the examining table, bend, and squat. Tr. 396-97. He had a normal gait and needed no assistive ambulatory devices. Tr. 397. However, only one week later, Young arrived at a psychological evaluation using a cane and walking with a slow gait and marked limp. Tr. 403.

Young did not seek medical treatment again until March 2015 when he had some tenderness, spasm, and pain in his back and still walked with a cane. Tr. 411. Young had "unremarkable" spine x-rays in July 2015. Tr. 488. Although MRIs showed a "small" central disc protrusion, "mild" neural foraminal stenosis, and a three to four millimeter foraminal protrusion, Young described his low back pain as intermittent and mild. Tr. 480, 506. An MRA of Young's neck and MRI of Young's thoracic spine were both normal. Tr. 475, 481. Also in July 2015, Young had a full range of motion in his neck and extremities with normal strength in all areas tested except his left leg, which was rated as four out of five. Tr. 539-40. Young described his low back pain as only mild and intermittent and reported his pain was aggravated with activity, sitting, and standing for long periods. Tr. 506, 594.

During February and March 2016 Young was able to bear weight on his left side but appeared to be in pain and walked with a noticeable limp and antalgic gait. Tr. 508. However,

Young's physical examinations indicate his gait was "casual" and "within normal limits." *Id*. He had mild tenderness and spasm in his back with a normal range of motion. Tr. 510. He exhibited only a mild limitation in the range of motion in his extremities. *Id*.

Young did not receive medical treatment again until late December 2016 when he participated in a psychological evaluation with Dr. Mark Lehman. Tr. 490. Young explained he had been hit by a car while walking 16 years priors and had suffered a gradually worsening back injury that led him to seek medical attention for the first time a year prior. Tr. 492. Young believed he had two herniated and bulging discs and reported constant pain. *Id*. Young was not on prescription medication but reported taking hydrocodone given to him by a friend. *Id*. He also reported he required a wheelchair. *Id*.

Less than three months later, in March 2017, Young still complained of low back pain, but was using a cane to attend appointments rather than a wheelchair. Tr. 515. Young described his pain as moderate and intermittent but complained it was not well-controlled with hydrocodone that had been supplied by a friend. *Id*. Young had a decreased range of motion in his spine, but his extremities were normal. Tr. 515-16. The physician found his condition to be "variable overall." Tr. 515. That same month, Young reported to a different physician that he had received a prescription for hydrocodone from a doctor and that he knew it to be the only medication that would help alleviate his pain. Tr. 591.

Young began seeing Dr. Williams in March 2017 and complained of more severe symptoms. Tr. 608. For example, Young rated his low back pain as 8 out of 10 and indicated it is relieved only by lying in bed. *Id*. Young began complaining of a pinching feeling in certain positions that causes him to "instantly go[] to the ground with pain." Tr. 607. After only three examinations of Young, Dr. Williams completed multiple opinion forms finding Young is

12

permanently and totally disabled and describing an extremely restrictive RFC. Tr. 617-24. Dr. Williams continued to treat Young approximately one time per month through January 2018. Tr. 598-604. During these appointments, Young described low back pain aggravated by walking and moving and alleviated by staying in bed. *Id*. Young consistently rated his pain between 5/10 and 8/10 in severity. *Id*. Despite Dr. Williams' opinion of Young's limited functional ability, his records typically do not include any physical examination findings. Tr. 600, 602, 604, 607-08. To the extent they do, the findings are mostly normal with respect to his back and legs. Tr. 598-99, 601, 603, 605-06.

In summary, although Young consistently complained of some degree of back pain, his physical examinations were mostly normal with the exception of slight decreases in strength in his left leg and range of motion in his back. Further, although Young made inconsistent reports regarding whether he required a wheelchair, cane, or any ambulatory assistive device, the record does not clearly reflect that any assistive device was prescribed for him and physical examinations reveal his gait was "within normal limits." The objective medical evidence, the CDI report, and the state agency consultant's opinion that Young can perform medium work, constitute substantial evidence in support of the more restrictive RFC determined by the ALJ and which states that Young has the residual functional capacity to

> lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday with normal breaks. [Young] can never climb ropes, ladders, or scaffolding. [Young] can never crawl. [Young] can have no exposure to extreme cold, unprotected heights, or dangerous machinery. [Young] can occasionally engage in stooping, kneeling, or crouching.

Tr. 24.

### III. Conclusion

For the reasons discussed above, the Commissioner's Motion is **GRANTED**, Young's Motion be **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

Singed on August 10, 2020 at Houston, Texas.

_____

Christina A. Bryan
United States Magistrate Judge